IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

BILLIE L. AUSTIN,

               Plaintiff,           Civil Action No.
                                 01-CV-234 (LEK/DEP)

                v.

JO ANNE B. BARNHART, Commissioner
of Social Security,[1]

               Defendant.

_____

APPEARANCES:                 OF COUNSEL:

For Plaintiff:

TOBIN AND DEMPF LLP         R. CHRISTOPHER DEMPF,
33 Elk Street                  ESQ.
Albany, NY 12207

For Defendant:

HON. GLENN T. SUDDABY     WILLIAM H. PEASE, ESQ.
United States Attorney for the    Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL    BARBARA L. SPIVAK, ESQ.
Social Security Administration    Chief Counsel, Region II

_____

[1]     Plaintiff's complaint in this action, which was filed on February 15, 2001, named Kenneth S. Apfel, in his capacity as Commissioner of the Social Security Administration, as the defendant.  On November 9, 2001 Jo Anne B. Barnhart took office as Social Security Commissioner.  The Commissioner has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to allow this matter to proceed.  *See* 42 U.S.C. § 405(g).

26 Federal Plaza
New York, NY 10278                      ANDREEA LECHLEITNER, ESQ.
                                        Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Billie L. Austin, the daughter of a deceased wage earner,

has commenced this proceeding pursuant to section 205(g) of the Social

Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), seeking judicial

review of the denial of applications on her behalf for child's insurance

benefits and supplemental security income ("SSI") payments.  Plaintiff

maintains that the denial of those applications, which was based on the

finding that despite her psychological limitations she retains the residual

functional capacity ("RFC") to perform simple, unskilled work at any level

of physical exertion and application of that RFC finding to the medical-

vocational guidelines (the "grids") established in the governing regulations,

20 C.F.R. Pt. 404, Subpt. P, App. 2, was inappropriate in light of her

exertional and nonexertional limitations, and that the Commissioner

instead should have been required to adduce testimony of a vocational

expert in order to satisfy her burden of establishing the existence of jobs

capable of being performed by the plaintiff.  Plaintiff also contends that the

administrative law judge ("ALJ") hearing the matter improperly rejected her

subjective symptomatic complaints, and additionally maintains that in light of conflicting evidence in the record concerning her mental limitations, the ALJ should have ordered an independent examination in order to complete the record.

Having carefully considered the record now before the court, in light of plaintiff's arguments and applying the requisite level of deference owed to the Commissioner's determination, I find that that determination resulted from the application of proper legal principles, and is supported by substantial evidence.

## I.    BACKGROUND

The plaintiff, whose legal name is Billie L. Austin but who is known as Lashana, was born on November 27, 1978; at the time of the hearing in this matter, she was nineteen years old.  Administrative Transcript 22-23, 87.[2]  Plaintiff is five feet five inches in height, and weighs 208 pounds.  AT 23.  Ms. Austin is not married, and has a son who at the time of the hearing was five years of age and attended kindergarten.  AT 23, 32. Plaintiff lives in a house together with her mother, stepfather, sister, stepsister, and son.  AT 24.

The record in this case reflects a history of limitations, principally

_____

[2]      Portions of the Administrative Transcript, Dkt. No. 4, which was filed by the Commissioner together with her answer, will be hereinafter cited as "AT ___."

mental in nature, which have manifested themselves throughout the years since plaintiff's early childhood.  Plaintiff attended school only through ninth grade, and has not achieved a General Equivalency Diploma ("GED").  AT 26-27.  According to the plaintiff she can read and write, though not well.  AT 26.  While in school plaintiff was found to suffer from multiple disabilities, and was classified at various times as learning disabled, speech impaired, and emotionally disturbed, receiving special educational and related services to address her impairments.  *E.g.*, AT 171-82, 208-19, 220-22.  Plaintiff's educational achievements can fairly be characterized as having been modest at best; Ms. Austin achieved very low grades in the special educational programs in which she was enrolled, and was excessively absent from school during the time of her attendance.  AT 27, 35-36, 171-85, 209-22.

The plaintiff has never worked, although she did participate for six months in a paid job training program.  AT 28.  In response to questioning by the ALJ during the hearing, however, plaintiff signaled her belief that she is capable of working.  AT 29.

In addition to her mental impairments plaintiff suffers from mild asthma, though that condition is controlled by an inhalant medication.  AT 30-31.  Plaintiff also experiences knee and back pain, causing her to

experience problems in sleeping and difficulties in lifting, although she has not seen a specialist with respect to these conditions.[3]  AT 36-38.  Aside from her asthma inhalant, plaintiff takes no medications.  AT 30.

According to her testimony, plaintiff's activities are somewhat modest.  Plaintiff does not possess a driver's license, although she is apparently able to utilize public transportation.  AT 25.  With the assistance of others, Ms. Austin is able to care for her son, assist with the household laundry and vacuuming, and take walks.  AT 31-32.  Plaintiff does not report having any hobbies, although she does watch television and do some cooking.  AT 32-33, 39.  Plaintiff does not read, visit relatives, or attend church.  AT 33.

Plaintiff's mental limitations were addressed over the years by various professionals.  Plaintiff was examined in December of 1988 by school psychologist Mary Rose Bates, who recommended that Ms. Austin's circumstances be reviewed by her school's committee on special education for consideration of placement in a special education program to address her language and academic deficiencies.  *See* AT 211-13.  Another school psychologist, Mary Rose Duncan, Ph. D, evaluated the

---

[3]     During the hearing plaintiff testified that she saw her primary care physician, Dr. Grossman, to address her back.  AT 36-37.  There are no medical reports in the record regarding that condition.

plaintiff in March of 1991, apparently as a result of a behavioral outburst at school.  *See* AT 208-10.  Based upon that evaluation, Dr. Duncan noted "a significant discrepancy between [plaintiff's] verbal processing and visual-perceptual processing ability" and that "[t]hroughout her years in school, she has been withdrawn and uncommunicative", advising that she receive counseling and a change in placement to address those concerns. AT 210.

In June of 1997, Dr. Jacqueline Bashkoff conducted a psychiatric and intellectual evaluation of the plaintiff.  *See* AT 188-90.  Dr. Bashkoff assessed the plaintiff's full scale IQ at 78, and rated her GAF score as 60.[4]  AT 189.  Based upon her examination, Dr. Bashkoff reported that Ms. Austin was oriented to person, place, and time; her mood was normal; and her insight, judgment, and cognitive abilities were intact.  AT 188-89. Dr. Bashkoff noted further that plaintiff was not suicidal or homicidal, and did not have paranoid ideations.  AT 189.  Dr. Bashkoff observed that plaintiff was able to recall recent and remote events, and was able to concentrate.  *Id.*  In her report Dr. Bashkoff made no Axis I or II diagnosis,

---

[4]      The Global Assessment of Functioning ("GAF") scale considers psychological, social, and occupational functioning on a hypothetical continuum of mental health. Diagnostic and Statistical Manual of Mental Disorders 34 (American Psychiatric Association, 4th Ed. Text Revision 2000) ("DSM-IV-TR").  A GAF score of 60 signifies the presence of moderate symptoms such as occasional panic attacks, or moderate difficulty in social, occupational, or school functioning, including few friends or conflicts with peers or co-workers.  *Id.*

and found that plaintiff displayed no signs of clinical anxiety or depression. AT 188-89.

The plaintiff was also evaluated on March 11, 1997 by Dr. Paul J. Shields, a psychologist. *See* AT 186-87. Dr. Shields reported finding a full scale IQ of 82, characterized by him as "placing her in the low normal range of intelligence." AT 186. Dr. Shields observed that plaintiff's test results "should be taken as a conservative estimate of [her] potential because she did not seem to really become interested in the test until the third subtest". AT 187. Dr. Shields did perceive a lack of maturity on plaintiff's part in certain social areas, and concluded that her age and relative inexperience would have to be considered "when teaching her new tasks, especially those involving dealing with the public." *Id.* Dr. Shields concluded his report, by stating that "[g]iven time and support Lashana could become a valued employee." *Id.*

On November 18, 1998, apparently at the request of her counsel, plaintiff was examined by Dr. John Wapner, a psychologist, who completed a mental impairment questionnaire reporting the results of his examination.[5] *See* AT 223-26. Dr. Wapner's evaluation was based upon

---

[5]    Dr. Wapner's impressions are recorded on a standard form developed for use in evaluating mental impairments against those listed in the regulations as presumptively disabling.

a one hour interview of the plaintiff; there is no indication as to what medical records, if any, were reviewed by Dr. Wapner prior to completion of his assessment.  AT 221, 223.  In terms of functional limitations, Dr. Wapner reported a marked restriction in plaintiff's activities of daily living, extreme difficulties in maintaining social functioning, and continual episodes of deterioration or decompensation in work or work-like settings. AT 226.  Dr. Wapner further recorded that plaintiff exhibits chronic anxiety and fear, and that she copes with these problems by withdrawal from social interaction and compulsive "rocking" back and forth.  AT 224.  Dr. Wapner noted a DSM-IV Axis I diagnosis of 300.02 (Generalized Anxiety Disorder), an Axis II diagnosis of 301.9 (Personality Disorder Not Otherwise Specified), and a GAF score of 50.[6]  AT 223.

Plaintiff's records were reviewed in 1997 by two state agency psychologists, Drs. Jeffrey B. Dunn and Mark Tatar.  Based upon that review, those consultants assessed plaintiff's abilities in twenty specified areas grouped under the headings of understanding and memory, sustained concentration and persistence, social interaction and adaptation.  *Id.*  Of those twenty areas, the consulting psychologists found

---

[6]      A GAF score of 50 is suggestive of serious symptoms, such as suicidal ideations, or any serious impairment in social, occupational, or school functioning, including having friends or being able to keep a job.  DSM-IV-TR 34.

that plaintiff had only one moderate limitation, in her ability to set realistic goals or make plans independently of others, and that in the remaining areas her abilities were not significantly limited.  AT 200-01.

II.    PROCEDURAL HISTORY

    A.    Proceedings Before The Agency

Plaintiff applied for SSI and disabled child's benefits on May 12, 1997.  AT 87-88, 230-32.  In those applications for benefits, plaintiff alleged disability stemming from a learning disability and mental illness, ascribing a disability onset date of November 30, 1995 to those impairments.  *Id.*; *see also* AT 107.  Those applications were denied, both initially and on reconsideration.  AT 42-43, 234-37, 239-42.

At plaintiff's request a hearing was conducted with regard to the denial of her applications on November 10, 1998 before ALJ Carl E. Stephan.  *See* AT 19-41.  Following the hearing, at which plaintiff was represented by counsel, ALJ Stephan rendered a decision dated January 26, 1999.  AT 11-15.  In his decision, the ALJ applied the governing five part test, finding that the plaintiff had not engaged in substantial gainful activity, and that the proof demonstrated the existence of a medically determinable impairment or combination thereof, in the form of a severe mental impairment, of sufficient severity to restrict her ability to perform

9

basic work activities.  AT 12.  That finding was based upon, *inter alia*, plaintiff's classification at school as learning disabled, as well as various psychological evidence in the record.  *Id.*  The ALJ went on to find, however, that the plaintiff's mental impairment did not meet or equal any of the listings set forth in the applicable regulations, specifically rejecting the findings of Dr. John Wapner to the extent that they might at least partially satisfy the requirements of Listing 12.05.  *Id.*

Noting that the plaintiff had no prior relevant work experience, the ALJ then proceeded to step five of the familiar five part test, concluding that the plaintiff retains the RFC to perform simple, unskilled work at any level of physical exertion.  AT 12-13.  Applying that RFC finding to the grids, and particularly Rule 204.00 thereof, the ALJ concluded that a finding of no disability was warranted.  AT 13-14.

The ALJ's determination became final on December 13, 2000 when the Social Security Administration Appeals Council rejected plaintiff's application for review of that decision.  AT 2-3.

B.    Proceedings Before This Court

Plaintiff commenced this action on February 15, 2001.  Dkt. No. 1. Issue was thereafter joined by the Commissioner's filing of an answer, accompanied by an administrative transcript of proceedings before the

agency, on April 30, 2001.  Dkt. Nos. 3, 4.  With the filing of briefs on

behalf of the plaintiff on August 12, 2002, Dkt. No. 8, and the

Commissioner on August 21, 2002, Dkt. No. 9, the matter is now ripe for

determination and has been referred to me for the issuance of a report

and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(d).  *See also* Fed. R. Civ. P. 72(b).[7]

III.    DISCUSSION

     A.    Scope of Review

_____A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal*

*v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F.

Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*,

817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to

_____

    [7]      This matter has been treated in accordance with the procedures set forth
in General Order No. 18 (formerly, General Order No. 43) which was issued by the
Hon. Ralph W. Smith, Jr., then-Chief United States Magistrate Judge, on January 28,
1998, and amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on
September 12, 2003.  Under that General Order an action such as this is considered
procedurally, once issue has been joined, as if cross-motions for judgment on the
pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure.

whether the Commissioner applied the proper legal standards, her decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone*, 70 F. Supp.2d at 148. If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)). To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Id.*; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record,

examining the evidence from both sides, because an analysis of the
substantiality of the evidence must also include that which detracts from
its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v.
NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards
have been applied, and/or that substantial evidence does not support the
agency's determination, the agency's decision should be reversed.  42
U.S.C. § 405(g); *see Martone*, 70 F. Supp.2d at 148.  In such a case the
court may remand the matter to the Commissioner under sentence four of
42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to
develop a full and fair record or to explain his or her reasoning.  *Martone*,
70 F. Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.
1980)).  A remand pursuant to sentence six of section 405(g) is warranted
if new, non-cumulative evidence proffered to the district court should be
considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health &
Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without
remand, while unusual, is appropriate when there is "persuasive proof of
disability" in the record and it would serve no useful purpose to remand
the matter for further proceedings before the agency.  *Parker*, 626 F.2d at
235; *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 57 (2d

Cir. 1992); *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

     B.    Disability Determination - The Five Step Evaluation Process

     The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

     The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§

404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp.2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it

becomes incumbent upon the agency to prove that the claimant is capable of performing other work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

     C.    The Evidence In This Case

In support of her appeal plaintiff raises two arguments. Plaintiff first asserts that the ALJ erred in his assessment of the extent of her workplace capabilities, given her physical and mental impairments. Additionally, plaintiff argues that her nonexertional limitations, resulting principally from the mental impairments from which she suffers, make resort to the grids in order to satisfy the Commissioner's burden at step five of the relevant inquiry, in lieu of eliciting vocational testimony, inappropriate.

     1.    RFC Finding

In order to assess a claimant's ability to perform work existing in significant numbers in the national economy, an ALJ must first determine the limits of a claimant's RFC. A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC finding is

informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id.*; *Martone*, 70 F.Supp.2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. § 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F. Supp.2d at 150 (citing *Ferraris,* 728 F.2d at 587).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F. Supp.2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F.Supp. 300, 309-10 (E.D.N.Y. 1997).

In this instance the ALJ concluded that Ms. Austin retains the RFC

"to perform simple, unskilled work at any level of physical exertion[.]"  AT

13.  This finding is amply supported by evidence in the record.

From an exertional point of view, plaintiff suffers from few if any

documented limitations.  Plaintiff does reportedly suffer from asthma; she

freely admits, however, that the condition is "mild", and is being medically

treated.  AT 30-31.  While it is true that plaintiff has also complained of

musculoskeletal difficulties, there is no documented treatment for any

such condition, plaintiff having undergone only annual checkups, with her

sole visit to a doctor in the year prior to the hearing having been to a

gynecologist.  *Id.*  The principal "evidence" in the record cited to

demonstrate the existence of physical limitations is plaintiff's own report

concerning her abilities.  *See* AT 137.  There is no medical evidence in the

record containing objective, clinical findings relative to plaintiff's exertional

limitations now claimed in support of her appeal.

There is slightly more evidence to support plaintiff's contention that

she suffers from nonexertional limitations.  Though somewhat equivocal,

the record nonetheless does provide substantial evidence to support the

finding that Ms. Austin is capable of performing simple, unskilled work.

That finding is supported by the findings of Dr. Bashkoff and Dr. Shields,

both of whom examined the plaintiff, as well as the assessments of two

consulting psychologists, Drs. Dunn and Tatar.  While there is a report in the record from Dr. Wapner, who examined the plaintiff one time, for a total of an hour, which arguably casts doubt upon the opinions of the two consultants, the ALJ was entitled to weigh the conflicting evidence and, because there is substantial evidence in the record to support his finding, the report alone does not provide a basis for reversal of the Commissioner's determination.  See, *e.g.*, *Garcia v. Barnhart*, No. 01 Civ.8300, 2003 WL 68040, at *5 n.4 (S.D.N.Y. Jan. 2, 2003) (consultative physicians who saw plaintiff only once did not have chance to develop ongoing relationship and thus were not treating physicians).

In sum, plaintiff's contention that the ALJ failed to consider the full extent of her physical and mental conditions and the limitations associated with those conditions in arriving at his determination of no disability does not provide a basis to override that finding.

### 2.   Resort To The Grids

_____In her appeal, plaintiff maintains that the ALJ's resort to the grids to undertake step five of the analysis was improper since it failed to take into consideration plaintiff's nonexertional limitations.  Those limitations, according to the plaintiff, include her back and knee pain, as well as the

mental disabilities experienced by her.[8]

Ordinarily, the Commissioner can meet her burden in connection with the fifth step of the relevant disability test by utilizing the grids.  *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986).  The grids take into consideration a claimant's RFC, as well as his or her age, education and work experience, in order to determine whether he or she can engage in substantial gainful work in the national economy.  *Id.*  Whether or not the grids should be applied in order to make a step five determination presents a case-specific inquiry which depends on the particular circumstances involved.  *Bapp*, 802 F.2d at 605. If a plaintiff's situation fits well within a particular classification, then resort to the grids is appropriate.  *Id.*  If, on the other hand, nonexertional impairments, including pain, significantly limit the range of work permitted by exertional limitations, then use of the grids is inappropriate, in which case further evidence and/or testimony is required.[9]  *Rosa*, 168 F.3d at

---

[8]       In her brief, plaintiff also alludes to a "severe hearing disability".  *See* Plaintiff's Brief (Dkt. No. 8) at 12.  A careful review of the record, however, including the portion cited in support of that proposition (AT 102-05) and plaintiff's hearing testimony, fails to reveal evidence of such a deficiency.

[9]       As one court has explained,

> [a] nonexertional limitation is one imposed by the claimant's impairments that affect [his or] her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments and pain.

78; *Bapp*, 802 F.2d at 605-06.

The first respect in which plaintiff claims the ALJ erred in applying the grids was to overlook her limitations associated with back and knee pain.  Pain, particularly if it extends beyond merely limiting the capacity to lift more than a certain amount of weight, can qualify as a nonexertional limitation.  *See* 20 C.F.R. § 416.969a(c); *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (citing *Gallagher v. Schweiker*, 697 F.2d 82, 84 (2d Cir.1983)).  As was previously noted, however, the record in this case is devoid of any evidence which clinically supports the existence of pain associated with plaintiff's asthma, back and knee problems.  Plaintiff argues that it was error, notwithstanding this lack of clinical proof, to disregard her testimony concerning these conditions.

Without question, an ALJ must take into account subjective complaints of pain in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant.  *Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp.2d at 151 (citing *Marcus*).  Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain.  *See*

_____

*Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997) (citing 20 C.F.R. § 404.1569(a), (c)).

*Mimms*, 750 F.2d at 185-86.  In deciding how to exercise that discretion the ALJ must consider a variety of factors which ordinarily would be relevant on the issue of credibility in any context, including the claimant's credibility, his or her motivation, and the medical evidence in the record. *See Sweatman*, 1998 WL 59461, at *5 (citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment which one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[10]  *Barnett*, 13 F. Supp.2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4)

---

[10]     In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp.2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 151 (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Secretary, Dep't of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984).

It may be, as plaintiff asserts, that she does suffer from some degree of discomfort as a result of her back and knee conditions.  The fact that she suffers from discomfort, however, does not automatically qualify her as disabled, since "disability requires more than mere inability to work

without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

In this instance the ALJ properly rejected plaintiff's complaints of pain. Both by regulation and less formal ruling, the agency has made it clear that symptoms, including pain, will be considered only to the extent that there are objective, clinical findings to confirm the symptomology. *See* 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996). Because the record in this case lacks so much as a shred of objective evidence that plaintiff suffers from a back or knee condition which could be expected to produce pain, the ALJ properly rejected her subjective testimony in this area.[11]

Plaintiff also asserts that the extent of the limitations resulting from her mental condition made resort to the grids inappropriate. In response, the Commissioner notes that where a claimant has only nonexertional limitations – as opposed to a combination of exertional and nonexertional limitations – the grids can be used as a "framework", although they cannot direct a conclusion. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 400.00(e)(1).

The presence of a nonexertional limitation such as a mental

---

[11]   It was unnecessary in this case for the ALJ to make credibility determinations with regard to the plaintiff's testimony in order to reach his determination regarding the question of disability. While the plaintiff did testify regarding her physical and mental conditions, observing that she becomes irritable when she is required to sit for long periods and must rock to relieve her stress, she candidly testified during the hearing that despite these factors she believes she could work.

deficiency which does not affect a claimant's exertional abilities, but nonetheless could serve as a distraction affecting the applicant's ability to work, is a factor which may remove a case from the purview of the grids. *Samuels v. Barnhart*, No. 01 Civ. 3661, 2003 WL 21108321, at *12 (S.D.N.Y. May 14, 2003) (citing *De Leon v. Secretary of Health & Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984)).  Undeniably the record in this case suggests that the plaintiff experiences some degree of limitation on her ability to perform work, based upon her mental impairments.  The plaintiff does not read and write well, and becomes irritable from having to sit too long, requiring to rock to remove her stress.  AT 13, 26, 29, 33.  The record also documents certain, though relatively isolated, instances of inappropriate aggression toward others.  AT 13, 210.  Nonetheless, plaintiff is not under psychological care or counseling, and appears to be able to utilize public transportation and care for the needs of both herself and her infant son.  AT 13, 25, 30-32.

Moreover, Dr. Bashkoff noted in her report that plaintiff's activities of daily living were good.  AT 189.  Dr. Bashkoff's findings are fully supported by the assessment of Dr. Shields as well as the results of reviews of plaintiff's records by Drs. Dunn and Tartar.  AT 186-87, 191-202.  As the Commissioner argues, the reports of those four professionals support the

ALJ's finding of plaintiff's ability to perform simple, unskilled tasks, a conclusion which is buttressed by plaintiff's hearing testimony, in which she testified that she thinks that she would be able to work, and does not think that there are certain types of work that she cannot do.  AT 29.

Plaintiff contends that in accepting the conclusions of those four professionals, as well as plaintiff's own hearing testimony, the ALJ improperly dismissed the reports of Dr. Wapner, who saw the plaintiff on one occasion.  *See* AT 223-26.  It is clear from his decision, however, that the ALJ carefully considered Dr. Wapner's report, but found it appropriate to reject it based on the lack of clinical findings, the fact that Dr. Wapner saw the plaintiff only once, and that Dr. Wapner's questionnaire was completed at the request of plaintiff's counsel.  *See* AT 12.

Plaintiff also argues that the ALJ's minimization of the effect of plaintiff's mental impairment on her ability to do work overlooks plaintiff's testimony.  Once again, it is plaintiff who indicated her belief that she was capable of performing work.  AT 29.  By her own admission, plaintiff has not sought psychiatric treatment, and has not been prescribed any psychotropic medication.  AT 30, 109, 188.  Any contention that plaintiff's mental condition would serve as an impairment to her ability to work is belied by the testimony concerning her daily activities, including her ability

26

to utilize public transportation, take care of herself and her son, and assist in housekeeping chores.[12]  AT 25, 31-32, 128-31.

Based upon the foregoing, I recommend a finding that the ALJ did not err in concluding that despite her claimed nonexertional limitations, the plaintiff is capable of performing work at all exertional levels, thereby making application of medical-vocational rule 204.00 appropriate.

IV.   SUMMARY AND RECOMMENDATION

The plaintiff, who during the hearing in this matter candidly acknowledged her belief that she is capable of working, nonetheless maintains that because of her physical and mental impairments and their combined effect on her ability to engage in work related activities, she is unable to perform work which exists in significant numbers in the economy, and therefore should have been found to be disabled.

Based upon my thorough review of the record in this case, I find the ALJ's determination that plaintiff does not suffer from exertional limitations is supported by substantial evidence.  I also find that the ALJ properly rejected plaintiff's subjective and wholly unsupported complaints of pain associated with her back and knee conditions, which have gone

---

[12]     Plaintiff has also reported that she does not have difficulties with sitting, standing, walking, lifting, concentrating, remembering, or understanding.  AT 131.

untreated, in light of the fact that little or no medical evidence is contained

in the record regarding those conditions.  I further find that the ALJ's use

of the grids at step five of the controlling test was appropriate, based upon

the psychological evidence in the record that plaintiff does not suffer from

a nonexertional impairment, based upon her mental conditions, which

significantly restricts her ability to engage in a broad range of work

permitted by her exertional limitations.  In light of the foregoing, it is

hereby

     RECOMMENDED that defendant's motion for judgment on the

pleadings be GRANTED, that the Commissioner's determination be

AFFIRMED, and plaintiff's complaint in this matter be DISMISSED.

     NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court within ten (10) days.  FAILURE TO SO

OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roland v. Racette*,

984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy

of this Report and Recommendation upon the parties electronically and/or

by first-class mail.


David E. Peebles
U.S. Magistrate Judge

Dated:      June 7, 2005
            Syracuse, NY
G:\socialsecurity\Austin.wpd

29